1 | David D. Lin (*pro hac vice* forthcoming)
2 | **LEWIS & LIN LLC**
3 | 77 Sands Street, 6th Floor
4 | Brooklyn, NY 11201
5 | Tel: (718) 243-9323
6 | Fax: (718) 243-9326
7 | Email: David@iLawco.com
8 | *Attorneys for Fornix Holdings LLC*
9 | *And CP Productions, Inc.*

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Fornix Holdings LLC and CP Productions, Inc., <br> Plaintiffs, <br> - versus - <br> MW MEDIA, a foreign corporation d/b/a Eporner.com, <br> Defendants. | Case No.: <br><br> **VERIFIED COMPLAINT** |

Plaintiffs Fornix Holdings LLC ("Fornix") and CP Productions, Inc. ("CP Productions," together with Fornix "Plaintiffs") appear before this Court to file this Verified Complaint against MW Media ("Defendant"), and allege as follows:

**PRELIMINARY STATEMENT**

1. This is an action by Fornix and CP Productions, two Arizona corporations that own or license registered copyrights in various adult video works, for damages and injunctive relief arising from the massive infringement of Plaintiffs' copyrights by Defendant, and the serial piracy of Plaintiffs' content.

2. Fornix is the registered copyright owner of 414 audiovisual works of adult video content with the U.S. Copyright Office (the "Works").

3. Fornix licenses its video content solely to CP Productions for publication on its website located at <Gloryholeswallow.com> (the "GHS Website"), a highly acclaimed membership-based adult website featuring live action photos and videos.

4. Defendant operates an infringing website located at <eporner.com> that has been unlawfully hosting, storing, and redistributing copyrighted works of Plaintiffs and third parties (the "Eporner Website"). Recently, said infringing content has become persistent and incessant, causing increasing harm to Plaintiffs and necessitating this suit.

5. Defendant monetizes their copyright infringement upon Plaintiffs' Works by hosting paid-for third-party advertisements on the Eporner Website.

6. Defendant intentionally attempts to conceal its identity by (i) omitting registrant information on public domain registration records, known as "WHOIS" records, and/or (ii) masking their identifying information on WHOIS records through redactions and privacy emails, making it more difficult for Plaintiffs to identify Defendant and enforce their copyrights.

7. Plaintiffs have spent considerable effort and resources attempting to stop the large-scale infringement on Defendant's website. However, continued theft of Plaintiffs' valuable intellectual property has forced Plaintiffs to initiate this action.

## PARTIES

8. Plaintiff Fornix is an Arizona corporation that specializes in adult media content management.

9. Plaintiff CP Productions is an Arizona corporation that produces adult entertainment content. CP Productions owns and runs the GHS Website, which it uses to distribute visual and audiovisual works.

10. Fornix owns the copyrights on the video content displayed on the GHS Website, which it licenses to CP Productions.

11. Upon information and belief, business partners Marcin Wanat and Maciej Madon formed a polish civil partnership named MW Media, which was registered to do business in August of 2012.

12. MW Media's permanent place of business and address for service that is listed on publicly available Polish business registration records is Łączna 9, 32-600 Oświęcim, Oświęcim County, Oświęcim Commune, MAŁOPOLSKIE Voivodeship, Poland.

13. According to publicly available DMCA Designated Agent Directory records for <Eporner.com> ("Eporner Domain Name"), MW Media is the designated Service Provider for the Eporner Domain Name.

14. The DMCA Designated Agent Directory records for the Eporner Domain Name lists the site's Copyright Agent as DMCA Now LLC, which is the same Copyright Agent listed on the Eporner Website for copyright notices.

15. The address listed for Service Provider MW Media in the DMCA Designated Agent Directory lists an address of 64 Hoi Tuen Rd., Rm 607 Yen Sheng Centre, Kwun Tong, Hong Kong.

16. The Eporner Website lists the names and locations of several staff members. Several of these staff members are listed as being based out of Hong Kong, including the Eporner Website's primary operations and administrative personnel.

17. Upon information and belief, including the foregoing, MW Media and its affiliates and personnel either own and operate or they otherwise control the Eporner Website and the Eporner Domain Name.

18. According to public domain name records, Defendant uses the service whoisproxy.com for the Eporner Domain Name, which has an address in Virginia.

19. The Eporner Website lists contact@eporner.com as a general contact email.

## JURISDICTION AND VENUE

20. This is a civil action for injunctive and legal relief for copyright infringement, 17 U.S.C. § 501 *et seq*.

21. This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement pursuant to 28 U.S.C. §§ 1331, 1338.

22. This Court has personal jurisdiction over Defendant because it has purposefully targeted the U.S. by creating a website targeting Plaintiffs' U.S. clientele; acquiring proxy and privacy services through an American company (whoisproxy.com); voluntarily applying U.S. law on its website, specifically a DMCA notice-and-takedown policy; using Google, Bing, and Yahoo analytics to track the web traffic it uses for advertising sales; and directing their users to its affiliated Reddit site and X profile, all of which are U.S.-based.

23. Upon information and belief, a significant portion of the users of the Eporner Website are based in the U.S.

24. The extent to which Defendant targets or otherwise avails itself of U.S. consumers is evident in the publicly available Google Trends historical data for searches of the term "eporner". This data shows that searches for the term "eporner" have occurred often in the U.S., and in fact, data shows a steady increase in popularity of the search term over time. Google Trends data also shows that the term "eporner" has been searched in all 50 U.S. states, with searches in Arizona being high relative to searches in all U.S. states, and with no state showing zero historical searches.

25. Another way Defendant avails itself of U.S. consumers and laws is by using the top-level domain ("TLD") ".com". Defendant can only operate the Eporner Website with this TLD with the services of the U.S.-based company VeriSign, Inc. ("VeriSign").

26. VeriSign is the authoritative registry for all domain names with the TLDs ".com", which includes the Eporner Domain Name. VeriSign controls the infrastructure for these domain names and maintains and propagates the following information for each: (i) the domain name, (ii) the primary and secondary name servers, (iii) the name of the registrar, and (iv) the expiration date of the registration. If needed, VeriSign has the right and ability to revoke access to a ".com" domain name, rendering it "inactive."

27. Defendant relies on infrastructure services provided by VeriSign to maintain the Eporner Domain Name and operate the Eporner Website. Without VeriSign's services, the Eporner Website would be extremely difficult to locate and would lack the "online presence" of a universally recognized TLD ending in ".com".

28. The Eporner Website, as run by Defendant, maintains the operation and popularity of its site through use of a combination of the above listed U.S.-based services, and upon information and belief, other U.S.-based internet services. Defendant also lists U.S. Copyright law and states its intent to comply therewith on the Eporner Website. All these factors show how Defendant has shaped its business towards the U.S. market and has catered towards U.S.-based consumers.

29. Additionally, this Court has personal jurisdiction over Defendant because its actions cause foreseeable damage to Plaintiffs within the State of Arizona.

30. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)-(3).

## FACTS COMMON TO ALL CLAIMS

### Plaintiffs' Business and Copyrighted Works

31. CP Productions produces, markets, and distributes adult entertainment visual and audiovisual works.

32. CP Productions owns and runs the GHS Website to distribute its works. Since 2011, CP Productions has operated the GHS Website as the exclusive channel for distributing its full-length videos and photographs.

33. As of today, CP Productions has produced and posted over 1,000 videos on the GHS Website ("Works").

34. In 2018, Fornix was formed to prosecute, manage, and protect the copyrights in the Works.

35. Fornix handles the copyright management and licensing of the Works, including registering copyrights with the United States Copyright Office.

36. As of today, Fornix has registered copyrights for 414 Works ("Works" or "Registered Works"). A full list of the copyright registrations is attached hereto as Exhibit A.

37. Fornix will continue to seek copyright protection for works to be produced by CP Productions in the future.

38. Fornix holds all exclusive rights in the Registered Works, and exclusively licenses the Works to CP Productions to display and distribute through the GHS Website.

39. CP Productions uses a pay-to-access model to distribute the Works via the GHS Website.

40. A non-member visitor to the GHS Website may view five free videos per internet protocol address ("IP address"). These free videos are trailer sized and typically less than two minutes long.

41. To access the full-length videos and photographs, which are, on average, more than 40 minutes long, a visitor must create an account with the GHS Website by providing a valid email address, username, and password.

42. When creating an account, a visitor must also pay for a subscription to become a member with full access to the Works. The GHS Website offers three subscription plans: a 3-month membership at $79.95, a 6-month membership at $149.95, and a 12-month membership at $269.95.

43. Membership is issued once the credit card information provided has been verified and cleared by a third-party fraud prevention service.

44. Members have unlimited access to all copyrighted content distributed via the GHS Website, including downloadable videos and photographs.

45. Every full-size video accessed from the GHS Website includes a prominent "warning" announcement at the beginning of the video. The latest version states: "This video contains a unique 'Digital Identification' code. The code can identify the Member who shares it. (See autograph.xvid.com) This video is copyright and trademark registered. **It's illegal to share!** Criminal Copyright Code: 17 U.S.C. 506(a) and 18

1  U.S.C. 2139(c) bpm" (emphasis in original) and then includes a unique date of
2  registration for each video.
3        46.    Plaintiffs use non-party copyright enforcement agents to monitor for the
4  Works and copyright infringement across the Internet. These agents help detect other
5  websites that host or store the Works without Plaintiffs' authorization.

## Defendant's Infringing Conduct

7        47.    Defendant operates and maintains the Eporner Website and owns the
8  associated Eporner Domain Name.
9        48.    According to a WHOIS record and upon information and belief, the
10 Eporner Domain Name was acquired and registered on April 4, 2008, by Defendant or its
11 predecessors in interest.
12       49.    The Eporner Website is a hosting or "tube site," which allows individuals
13 to upload and share videos and images, provided it complies with the guidelines set out
14 on the Eporner Website.
15       50.    Defendant represents in its Eporner Website Terms of Use that it maintains
16 the right to "remove any [user content] we have reason to believe violates the intellectual
17 property rights of others and may terminate your use of the [Eporner] Website if you
18 submit any such [user content]."
19       51.    Defendant also has a "Repeat Infringer Policy" in its Terms of Use, which
20 states that "any user for whose MATERIAL we receive three good-faith and effective
21 complaints within any contiguous six-month period will have his grant of use of the
22 Websites terminated."
23       52.    Defendant has failed to follow its own policy.
24       53.    Defendant has been put on actual notice of the Works that have been posted
25 to the Eporner Website in violation of Plaintiffs' copyrights therein through Plaintiffs'
26 submission of DMCA notices. On some occasions, Defendant has taken down Plaintiffs'
27 videos from the Eporner Website after the DMCA notice was sent.
28

54. However, nearly all of the removed Works are immediately re-posted to the Eporner Website, often by the same users.

55. Defendant often fails to follow its own policy on repeat infringement by allowing users to post more than three separate infringing videos within a six-month period without taking down the users' account.

56. Through diligent monitoring of the Eporner Website, Plaintiffs have discovered repeat infringers that have been allowed to continue to post infringing content after far more than three effective DMCA complaints have led to removal of their posts.

57. For example, one user monitored by Plaintiff called "alphas1" has been allowed to continue reposting the Works even after more than 13 effective DMCA complaints led to takedowns of their infringing content in less than six months. Some of these complaints for alphas1 contained notices for the takedown of nearly 30 infringing videos at once. This number of effective complaints far exceeds the policy of three effective complaints within that period.

58. Plaintiffs continue to monitor several Eporner users with repeat behavior like the user alphas1's and have found that infringement by these users is rampant.

59. Defendant's failure to monitor infringing content and comply with its own repeat infringer policy forces Plaintiffs to vigilantly monitor the Eporner Website for reposts of the same infringing content by the same users and to expend substantial resources sending additional takedown notices for that same content.

60. By operating the Eporner Website and not properly restricting users from uploading infringing copies of the Works for free distribution, Defendant materially contributes to and supports the direct infringing conduct of its users.

61. When videos and photos are uploaded and stored on the Eporner Website, Defendant makes unauthorized derivative works of the Works, including through thumbnails, and it profits from others' unauthorized copying of the Works while failing to remove the content and/or the uploaders.

62. As such, Defendant conducts, enables, and encourages unauthorized copying and distribution of Plaintiffs' Works on the Eporner Website.

63. Upon information and belief, the Eporner Website only purports to be in compliance with DMCA requirements, and Defendant attempts to bolster this appearance of legality by facilitating takedowns of infringing content when it is effectively reported, all the while tolerating the proliferation of repeat offenders. This façade of compliance not only encourages users to continue to post infringing content, but the cycle of takedowns and reposts makes it difficult or even impossible to track how many of Plaintiffs' videos are currently or at any given time are displayed on the Eporner Website. It also makes it very difficult to track the number of views or the digital view count on any given video.

64. Plaintiffs believe that hundreds, if not thousands, of visitors to the Eporner Website have accessed and viewed the unauthorized copies of Plaintiffs' works.

65. Defendant is profiting from operating the Eporner Website.

66. Defendant does not charge Eporner Website users for viewing, interacting with, or uploading content in its site. Instead, Defendant solicits third-party advertising to monetize its users' infringement.

67. On a page on the Eporner Website titled "Advertising," Defendant outlines the benefits to third-party advertisers of purchasing ad units on the website. Defendant addresses potential advertisers by stating that it has "very high quality traffic with high visit duration time (average 7min 29sec), high rate of page view per visit (average 8.8), low bounce rate (23%) and high CTRs [click-through rates] for your ads."

68. Defendant uses a registered agent for notice of copyright infringements (DMCA Now LLC) and the Eporner Website is on the Copyright Office's registry of sites with appointed registered agents, as required by the DMCA, 17 U.S.C. §512(c). Defendant shares a purported DMCA policy with users on the Eporner Website, which Defendant states it imposes "voluntarily" as it is "not subject to United States law."

69. However, even with the use of a Copyright Agent, Defendant fails to qualify for the safe harbor under the DMCA because of its failure to effectively remove infringing content and its inability to comply with a reasonable policy for removing repeat infringers. Defendant has turned a blind eye to infringement on its website by failing to curb repeat infringement by users after receiving notice of such activities.

70. These failures make Defendant unable to utilize the service provider safeguards of the DMCA (17 U.S.C. § 512(i)).

71. Through DMCA Now LLC, Plaintiffs have submitted nearly 1,800 notices to Defendant. *See* Exhibit B (Log of Infringing Links Reported to DMCA Now) Plaintiffs have at times submitted dozens of notices per day.

72. It is difficult to calculate the exact number of infringing videos currently displayed on the Eporner Website or how many active links direct to unauthorized copies of the Works on the Eporner Website because of said taking down and reposting of videos, but upon information and belief, the number of infringing videos is likely to grow as this case proceeds.

73. Upon information and belief, the Eporner Website also includes the copyrighted works of other parties without authorization, in violation of the owners' copyrights. Plaintiffs base this belief on their knowledge of the industry and the observation that the other parties whose work has been pirated on the Eporner Website distribute their work through pay-to-watch models and prohibit free downloading or sharing of their content.

74. Because Plaintiffs rely on a pay-to-access model to distribute the Works via the GHS Website, the rampant infringement by Defendant through the Eporner Website hurts Plaintiffs' ability to profit from their content.

75. Numerous members of the GHS Website have informed Plaintiffs when they have found pirated videos on the Eporner Website and have expressed complaints that they have to pay for the Works while others can view them on the Eporner Website for free.

76. As of today, the Eporner Website remains active.

## COUNT I – COPYRIGHT INFRINGEMENT
## UNDER 17 U.S.C. § 501

77. Plaintiffs repeat and re-allege paragraphs 1-76 as if set forth herein.

78. Fornix is the exclusive owner of all the rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in Exhibit A.

79. CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106 (2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

80. Defendant, through the operation of its website, unlawfully created copies and derivative versions of the Works, either registered or unregistered, stored the unauthorized copies and derivatives through—at a minimum—causing the unauthorized derivatives to be accessed by visitors from the U.S. and copied or cached onto the U.S. visitors' local servers.

81. By storing and displaying Plaintiffs' Works, where third parties could freely access and download the videos for their own use, Defendant distributed the Works without Plaintiffs' authorization.

82. Defendant's direct unauthorized copying and distribution of the Works violated Plaintiffs' exclusive rights under 17 U.S.C. § 106.

## COUNT II – VICARIOUS COPYRIGHT INFRINGEMENT

83. Plaintiffs repeat and re-allege paragraphs 1-76 as if set forth herein.

84. Fornix is the exclusive owner of all rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in Exhibit A.

85. CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106(2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

86. Defendant operates the Eporner Website with the power to monitor and remove infringing content. While Defendant appears to remove infringing content upon

receiving a takedown notice from Plaintiff, Defendant has allowed the proliferation of repeat infringers who continue to repost Plaintiffs' Works after 13 or more effective DMCA complaints were issued against their content.

87. Defendant has failed to comply with a reasonable policy for removing repeat infringers, and as such those repeat infringers and others are empowered to continue to post Plaintiff's Works without authorization on the Eporner Website.

88. Thus, Defendant has profited from the direct infringement posted on its website and declined to fully exercise their right to stop or limit it.

89. Defendant has profited from the direct infringement posted on their website by selling ad space on the website and on the same page as the unauthorized copies of Plaintiffs' Works appear thereon.

90. As such, Defendant is vicariously liable for its users' direct copyright infringement conducted through the Eporner Website.

**COUNT III – CONTRIBUTORY COPYRIGHT INFRINGEMENT**

91. Plaintiffs repeat and re-allege paragraphs 1-76 as if set forth herein.

92. Fornix is the exclusive rights owner of all rights defined in 17 U.S.C. § 106 for the Registered Works, as evidenced in Exhibit A.

93. CP Productions is the exclusive licensee with the right to distribute and right to display the Registered Works under 17 U.S.C. § 106 (2) & (5) and is entitled to seek damages for infringement upon such rights pursuant to 17 U.S.C. § 501(b).

94. Defendant operates a hosting website, allowing users to post infringing content without adequately effectuating a policy to prevent the proliferation of the infringement, especially by users who Defendant actually knows have repeatedly posted infringing content. Therefore, Defendant materially contributes to its users' direct copyright infringement by facilitating the transmission, display, and storing of infringing copies of Plaintiffs' Works through the Eporner Website.

95. Defendant engages in, enables, or encourages the distribution of infringing content by its users with actual knowledge of the users' direct copyright infringement, as

Defendant has not taken consistent and adequate action to follow its own stated policy for addressing repeat infringement by individual users who have reposted Plaintiffs' Works dozens of times.

96. Defendant has profited from the direct infringement posted on its website by selling ad space on the website and on the same page as the unauthorized copies of Plaintiffs' Works.

97. Thus, Defendant materially contributed to others' direct copyright infringement by facilitating the transmission of infringing copies of Plaintiffs' Works through the Eporner Website.

## REQUEST FOR RELIEF

Plaintiffs respectfully request that the Court hereby:

1. Enter a judgment declaring that the Defendant has directly and willfully infringed Plaintiffs' copyrights in the Works distributed through the GHS Website pursuant to 17 U.S.C. § 501;

2. Enter a judgment against the Defendant for Plaintiffs' full actual and/or statutory damages arising from the Defendant's copyright infringement under 17 U.S.C. § 504;

3. Order an accounting and disgorgement of the Defendant's profits, gains and advantages realized from their unlawful conduct under 17 U.S.C. § 504;

4. Enter an order directing the Defendant to pay Plaintiffs the costs, expenses, and reasonable attorney's fees incurred by them in prosecuting this action pursuant to 17 U.S.C. § 505;

5. Enter a judgment enjoining the Defendant, as well as its officers, agents, servants, employees, and attorneys, including all Internet Service Providers that provide infrastructure to the Infringing Websites (including but not limited to domain name registrars, domain name registries, and website hosts), from future infringement of Plaintiffs' copyrights, including but not limited to requiring them to take all necessary action to:

    a. Deactivate and cancel the Eporner Domain Name;

    b. Deactivate the Eporner Website and permanently delete all information stored thereon relevant to Plaintiffs' Works;

    c. Permanently delete all copies and information stored on the Eporner Website relevant to Plaintiffs' works;

    d. Delete all copies of Plaintiffs' Works that have been uploaded to the Eporner Website, its affiliated sites, or any third-party websites;

    e. Cease the provision of all Internet services to the Defendant for the maintenance or operation of the Eporner Website websites, including but not limited to domain name registration, hosting, security, content delivery, and reverse proxy services;

6. Enter an order directing that the Eporner Domain Name be transferred to an account under Plaintiff's control;

7. Enter a judgment granting Plaintiffs pre-judgment and post-judgment interest at the applicable rate; and

8. Grant to Plaintiffs any further relief, either in law or equity, to which this Court deems them fit to receive.

DATED: November 18, 2025
   Brooklyn, New York

          Respectfully submitted,

          **LEWIS & LIN, LLC**

          By: /s/ David D. Lin

          David D. Lin, Esq.

          (*pro hac vice* forthcoming)

          *Attorneys for Fornix Holdings LLC and CP Productions, Inc.*

**VERIFICATION**

I, DAVID L. GRAVES, declare:

    1.    I am the co-owner and director of Plaintiffs Fornix Holdings LLC and CP Productions Inc. I am an authorized agent of Plaintiffs for the matters concerned in this Verified Complaint.

    2.    I have read the foregoing Verified Complaint and know the contents thereof. I have personal knowledge of Plaintiffs and their activities, including those set out in the foregoing Verified Complaint, and if called upon to testify I would competently testify as to the matters stated herein.

    3.    The factual statements in this Verified Complaint concerning Plaintiffs, their activities, and their claims are true and correct, except as to matters stated therein on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: November 17, 2025
Scottsdale, Arizona

_____
David L. Graves