**DECLARATION OF MARCIN WANAT IN SUPPORT OF DEFENDANT MW MEDIA'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

I, Marcin Wanat, hereby declare the following:

1.  I have the knowledge and capacity to speak on behalf of Defendant MW Media ("Defendant") in the above-captioned matter. I make the following declaration based on my personal knowledge. If called upon to do so, I could and would testify competently as to the facts stated herein.

2.  I am a citizen and resident of the country of Poland.

3.  My role in the operation of the eporner.com's website involves system monitoring and server administration.

4.  Eporner.com is a website operated by MW Media S.C., a civil law partnership created under the laws of the Republic of Poland. I am one of the partners of MW Media S.C.

5.  I have reviewed the materials in the complaint (Exhibits A and B). Neither I nor anyone at MW Media posted the allegedly infringing materials referenced in the Complaint to the eporner.com website, and neither did MW Media direct any person to post these materials on eporner.com.

6.  Before being notified of this lawsuit, I did not review any of the materials described in Plaintiffs' exhibits.

7.  I did not know that any of the allegedly infringing materials described in the Plaintiffs' complaint belonged to Plaintiffs until I was notified of the present action.

8. The domain name <eporner.com> was registered in Poland with a Polish company Home.pl.

9. The website <eporner.com> is hosted in the Netherlands by LeaseWeb Netherlands B.V., with security back-up files stored on servers located outside of the U.S. and provided by a Polish company OVH Sp. z o.o.

10. Eporner.com's primary DNS provider is LeaseWeb Netherlands B.V., and the secondary DNS provider is ipcom GmbH Austria.

11. Neither MW Media nor its partners control any tangible assets or real property in the United States. Neither MW Media nor its partners own or control any bank accounts or other similar liquid assets accounts in the United States.

12. MW Media does not sell or advertise goods or services to any person or company located within the United States.

13. MW Media does not and never has paid taxes in the United States.

14. MW Media does not conduct any business in the United States and is not registered to do business in the United States. MW Media has no officers; manufacturing or distribution facilities; no employees, directors, agents (except for our attorney in this matter, Jakub P. Medrala, Esq., and a DMCA agent for eporner.com, DMCA Now, LLC), or representatives; and holds no licenses in the United States.

15. MW Media has never derived any profit from any of MW Media activities in the United States as MW Media conduct no such activities.

16. MW Media does not specifically target any of its services to residents of the United States.

17. I do not have any control over the content of the advertisements that are displayed on the website or the types of products or services advertised on eporner.com. The advertisements are placed on eporner.com by third-party intermediaries.

18. In their complaint, Plaintiffs claim that "Defendant intentionally attempts to conceal its identity by (i) omitting registrant information on public domain registration records, known as 'WHOIS' records, and/or (ii) masking their identifying information on WHOIS records through redactions and privacy emails, making it more difficult for Plaintiffs to identify Defendant and enforce their copy rights."[1] However, there is no intentional attempt to conceal any such identity, as it is standard practice for domains to conduct this sort of protection amongst websites.

19. Plaintiffs also claim that, "[a]ccording to public domain name records, Defendant uses the service whoisproxy.com for the Eporner Domain Name, which has an address in Virginia."[2] However, Plaintiffs are mistaken, as MW Media does not use whoisproxy.com, and its domain is registered with a European registrar www.home.pl. It is possible that this registrar utilizes whoisproxy.com; however, MW Media does not have any control over this.

---

[1] ECF No. 1 at p. 2, ¶ 6 (Verified Complaint, filed November 18, 2025).
[2] *Id.* at p. 3, ¶ 18.

20. Plaintiffs further claim that "[t]his Court has personal jurisdiction over Defendant because it has purposefully targeted the U.S. by creating a website targeting Plaintiffs' U.S. clientele; acquiring proxy and privacy services through an American company (whoisproxy.com); voluntarily applying U.S. law on its website, specifically a DMCA notice-and-takedown policy; using Google, Bing, and Yahoo analytics to track the web traffic it uses for advertising sales; and directing their users to its affiliated Reddit site and X profile, all of which are U.S.-based.[3] As stated, Defendant does not use whoisproxy.com, and therefore, Defendant is not a customer of whoisproxy.com. Defendant does voluntarily accept DMCA notices to allow users to remove infringing content. Defendant does not use Google, Bing, or Yahoo analytics, but rather its own proprietary analytics tools that are self-hosted by MW Media.

21. Plaintiffs also are incorrect in claiming that, "[u]pon information and belief, a significant portion of the users of the Eporner Website are based in the U.S."[4] Although the United States may be a popular place for internet users, a much larger share of MW Media website's users come from the European Union, and Defendant's main users are located in Europe and Asia.

22. Plaintiffs allege that "[t]he extent to which Defendant targets or otherwise avails itself of U.S. consumers is evident in the publicly available Google Trends historical data for searches of the term 'eporner[.]' This data shows that searches for the term

---

[3]*Id.* at p. 4, ¶ 22.
[4]*Id.* at p. 4, ¶ 23.

4

'eporner' have occurred often in the U.S., and in fact, data shows a steady increase in popularity of the search term over time. Google Trends data also shows that the term 'eporner' has been searched in all 50 states, with searches in Arizona being high relative to searches in all U.S. states, and with no state showing zero historical searches."[5] However, this situation also applies anywhere in the world.

23. Plaintiffs allege that "[a]nother way Defendant avails itself of U.S. consumers and laws is by using the top-level domain ('TLD') '.com.[']  Defendant can only operate the Eporner Website with this TLD with the services of the U.S.-based company VeriSign, Inc. ('VeriSign')."[6] However, the TLD website is a popular domain worldwide, and VeriSign simply manages the DNS system for ".com" domain names and sales of domains "<.com>" are conducted by thousands of companies around the globe, including Europe, where the domain was purchased.

24. Plaintiffs claim that "VeriSign is the authoritative registry for all domain names with the TLDs '.com[,]' which includes the Eporner Domain Name. VeriSign controls the infrastructure for these domain names and maintains and propagates the following information for each: (i) the domain name, (ii) the primary and secondary name servers, (iii) the name of the registrar, and (iv) the expiration date of the registration. If needed, VeriSign has the right and ability to revoke access to a '.com' domain name, rendering it 'inactive.'" As stated above, VeriSign manages the DNS system for ".com"

---

[5]*Id.* at p. 4, ¶ 24.
[6]*Id.* at p. 4, ¶ 25.

domains; and, just as any other DNS service provider, it has the ability to block websites in certain circumstances.[7]

25. Plaintiffs claim that "Defendant relies on infrastructure services provided by VeriSign to maintain the Eporner Domain Name and operate the Eporner Website. Without VeriSign's services, the Eporner Website would be extremely difficult to locate and would lack the 'online presence' of a universally recognized TLD ending in '.com[.]'"[8] This is incorrect, however, as VeriSign manages only DNS and does not sell domain names directly. Domain names are sold across the globe by multiple sellers. Defendant purchased its domain from a European company. DNS is responsible solely for the domain name and has no connection to the infrastructure servers. Defendant's servers are located in Europe.

26. Plaintiffs also state that "[t]he Eporner Website, as run by Defendant, maintains the operation and popularity of its site through use of a combination of the above listed U.S.-based services, and upon information and belief, other U.S.-based internet services. Defendant also lists U.S. Copyright law and states its intent to comply therewith on the Eporner Website. . . ."[9] As stated above, Defendant's entire server infrastructure, videos, pictures, and other content are located on servers outside of the U.S. and are provided by European companies. VeriSign is responsible for managing DNS for ".com"

---

[7] *Id.* at p. 4, ¶ 26.
[8] *Id.* at p. 5, ¶ 27.
[9] *Id.* at p. 5, ¶ 28.

domains that are sold through foreign companies. Because of this, the website can be easily transferred to another domain, such as "eporner.eu," which Defendant also owns. However, this is not done because of historical reasons, as people simply are attached to ".com" domains. Defendant is not utilizing any U.S.-based internet services. Defendant does or may mention U.S. copyrights to allow persons to remove videos, however, not for the purpose of subjecting Defendant to the U.S. jurisdiction.

27. Plaintiffs claim that "Defendant has been put on actual notice of the Works that have been posted to the Eporner Website in violation of Plaintiffs' copyrights therein through Plaintiffs' submission of DMCA notices. On some occasions, Defendant has taken down Plaintiffs' videos from the Eporner Website after the DMCA notice was sent."[10] However, this is false, as Defendant removes all noticed videos.

28. Plaintiffs further claim that ". . . nearly all of the removed Works are immediately re-posted to the Eporner Website, often by the same users."[11] However, Defendant never allows reposting of the same video. Defendant does receive notice that sometimes users attempt to circumvent security systems through uploading mirror images or modified videos to cheat its systems. Defendant is constantly improving its security systems through additional sources and resources, including, but not limited to, introducing advanced solutions and artificial intelligence.

---

[10] *Id.* at p. 7, ¶ 53.
[11] *Id.* at p. 8, ¶ 54.

29. Plaintiffs continue to state that, "[f]or example, one user monitored by Plaintiff . . . has been allowed to continue reposting the Works even after more than 13 effective DMCA complaints led to takedowns of their infringing content in less than six months. Some of these complaints . . . contained notices for the takedown of nearly 30 infringing videos at once. This number of effective complaints far exceeds the policy of three effective complaints within that period."[12] However, "Fornix" has never appeared in the mail that Defendant receives. "CP Production" appeared in 15 DMCA emails between 2021 and 2023. Defendant removed all videos; however, none of those emails are related to the user profile mentioned because this profile was created later in mid-2024. Most of the DMCA's notices in question were sent by "dmcaforce.com" on behalf of some "real4cash." Defendant currently is uncertain as to whether this a random-generated username that is registered by "Fornix" because it is not related to Fornix/Cp Productions, which have registered works.

    MW Media has not received DMCA notices for part of the links indicated in the Complaint; however, Defendant does sometimes receive notifications from Google, stating that it received a notice asking it to remove material from its search engine. In this case, Defendant also voluntarily removes flagged material, to err on the side of caution, even if Defendant has not received an official DMCA notice. Defendant also has not received any notices from Defendant's DMCA agent, indicated in the Complaint.

---

[12] *Id.* at p. 8, ¶ 57.

30. Plaintiffs claim that "[w]hen videos and photos are uploaded and stored on the Eporner Website, Defendant makes unauthorized derivative works of the Works, including through thumbnails, and it profits from others' unauthorized copying of the Works while failing to remove the content and/or the uploaders."[13] The system of creating thumbnails is present in any video-content website, and the thumbnails are visible in the search results, similar to other websites and services.

31. Plaintiffs allege that ". . . even with the use of a Copyright Agent, Defendant fails to qualify for the safe harbor under the DMCA because of its failure to effectively remove infringing content and its inability to comply with a reasonable policy for removing repeat infringers. Defendant has turned a blind eye to infringement on its website by failing to curb repeat infringement by users after receiving notice of such activities."[14] This is incorrect, as Defendant removes any and all videos pursuant to DMCA notices.

I declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true and current and that his declaration is executed on December 31, 2025 in Poland.

/s/ Marcin Wanat

_____
Marcin Wanat

---

[13] *Id.* at p. 8, ¶ 61.
[14] *Id.* at p. 10, ¶ 69.