**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fornix Holdings LLC, et al., | No. CV-25-04327-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| MW Media, | |
| Defendant. | |

The Court now considers MW MEDIA's ("MW") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 16). The Court **denies** the motion for the following reasons.

## I.    BACKGROUND

This action is brought by Plaintiffs Fornix Holdings LLC and CP Productions, Inc.—Arizona corporations that "that own or license registered copyrights in various adult video works." (Doc. 1 at 1.) Plaintiffs allege that MW operates a website (the "Website") "that has been unlawfully hosting, storing, and redistributing copyrighted works." (*Id.* at 2.) MW is a Polish civil partnership with a permanent place of business in Poland. (*Id.* at 3.) MW moves to dismiss the Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack of personal jurisdiction.

## II.    LEGAL STANDARD

When evaluating a Rule 12(b)(2) motion, "[u]ncontroverted allegations in the complaint must be taken as true, and factual disputes are construed in the plaintiff's favor." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).

"Personal jurisdiction over an out-of-state defendant is proper where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), *overruled on other grounds by*, *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025).

The Court evaluates personal jurisdiction under Rule 4(k)(2). "This Rule, which is commonly known as the federal long-arm statute, permits federal courts to exercise personal jurisdiction over a defendant that lacks contacts with any single state if the complaint alleges federal claims and the defendant maintains sufficient contacts with the United States as a whole." *Getz v. Boeing Co.*, 654 F.3d 852, 858 (9th Cir. 2011). This Rule "was established in response to the Supreme Court's suggestion that the rules be extended to cover persons who do not reside in the United States, and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1040 (9th Cir. 2022) (citation modified).

Rule 4(k)(2) applies when: (1) the claim asserted against the defendant arises under federal law; (2) "the defendant is not subject to jurisdiction in any state's court of general jurisdiction"; and (3) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). The first two prongs are undisputed here.[1] The analysis under the third prong is "nearly identical to the traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the defendants and the forum state, [courts] consider contacts with the nation as a whole." *Lang Van, Inc*, 40 F.4th at 1041 (citation modified).

A court has jurisdiction over a defendant not present in the forum if the defendant has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v.*

---

[1] MW's Motion primarily argues that it is not subject to jurisdiction in Arizona. (Doc. 16 at 11.) MW does not identify any other state where it would be subject to jurisdiction. Thus, this Court is entitled to analyze jurisdiction under Rule 4(k)(2). *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). MW acknowledges that "Plaintiffs may attempt to invoke [Rule] 4(k)(2)," but do not contend that the Rule does not apply here.

*Washington*, 326 U.S. 310, 316 (1945) (citation modified). The Court only evaluates whether it has specific personal jurisdiction over MW because Plaintiffs do not contend that MW is subject to general personal jurisdiction.

"There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant: (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation modified). The parties primarily dispute the first prong.

Here, the first prong is evaluated under the "effects test." *See id.* at 1069. Under this test "the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (citation modified). The parties primarily dispute the second element.

At a general level, the second element is satisfied "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Briskin*, 135 F.4th at 752 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Applied to "conduct occurring in cyberspace," the Ninth Circuit recognizes: (1) "contacts with the forum state could be in the form of electronic contacts"; and (2) "'something more' than mere passive nationwide accessibility [is] required to show express aiming at the forum state and, thus, satisfy due process." *Id.* (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). "In determining whether a nonresident defendant has done 'something more,' [courts consider] several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (citation modified).

The Ninth Circuit recently clarified that "express aiming" does not require a defendant to have a "forum-specific focus" or "differential targeting." *Briskin*, 135 F.4th at 757. Instead, it is sufficient "if the company knows—either actually or constructively about its customer base there and exploits that base for commercial gain." *Id.* (citation modified). Thus, "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Id.* at 758 (citation modified) (first quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021); then quoting *Mavrix Photo*, 647 F.3d at 1230).

## III.    DISCUSSION

The Court begins with the Complaint's allegations related to personal jurisdiction.

### A.  Personal Jurisdiction Allegations

The Complaint alleges as follows. MW is a Polish civil partnership and is the designated service provider for the Website. (Doc. 1 at 3.) The Website provides that its staff members and primary operations are based out of Hong Kong. (*Id.*) MW uses whoisproxy.com for the Website, which has a Virginia address. (*Id.*) Plaintiffs contend that personal jurisdiction is proper for the following reasons.

MW, through the Website, purposefully targeted the United States and a significant portion of the Website's users are based in the United States. (*Id.* at 4.) "[P]ublicly available Google Trends historical data" show that searches for the Website occur "often" in the United States and have occurred in each state. (*Id.*) The Website generates revenue through "third-party advertising." (*Id.* at 9.) MW used proxy and privacy services offered by an American company and applied United States' law on the Website. (*Id.* at 4.) MW also used "Google, Bing, and Yahoo analytics to track the web traffic it uses for advertising sales; and direct[ed] their users to its affiliated Reddit site and X profile, all of which are U.S.-based." (*Id.*)

Plaintiffs also point out that MW uses a ".com" top-level domain ("TLD"), which can only operate with the services of VeriSign, Inc., a United States based company that

- 4 -

"is the authoritative registry for all domain names with the TLDs '.com.'" (*Id.*)  Thus, Plaintiffs contend that the Website "maintains the operation and popularity of its site through use of a combination of . . . U.S.-based services." (*Id.*)

### B. Analysis

#### 1. *Purposeful Direction ("Effects Test")*

The Court first analyzes whether MW purposefully directed its activities towards the United States.  Again, this is evaluated under the effects test which asks whether MW (1) committed an intentional act, (2) expressly aimed at the United States, (3) causing harm known to likely be suffered in the United States.  *See Mavrix*, 647 F.3d at 1228.  The first prong is not at issue in this case—operating a passive website is an intentional act.[2]  *See, e.g., Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (9th Cir. 2010).  Rather, the parties heavily contest whether MW expressly aimed this act at the United States.  Again, under *Briskin*, express aiming does not require MW to have had a "United States focus."

The Ninth Circuit found that the "expressly aims" requirements were satisfied when a defendant "continuously and deliberately exploited" the forum's market for commercial gain by operating "a website whose economic value turns, in significant measure, on its appeal to [forum residents]." *See Mavrix*, 647 F.3d at 1230.  This case is similar to *Mavrix*.

To start, MW "makes money by selling advertising space on its website to third-party advertisers: the more visitors there are to the site, the more hits that are made on the advertisements; the more hits that are made on the advertisements, the more money that is paid by the advertisers to" MW.  *See id.*  Additionally, the Website appeals to a United States audience as Plaintiff alleges that a sizeable portion of its users are based in the United States.  (Doc. 1 at 4.)  Moreover, Plaintiffs allege that the Website generates revenue solely through advertisements as users are not charged for using the website.  (*Id.*

---

[2]  Plaintiffs, in their Reply, note that the "Website is more than a purely passive website because it has interactive features 'that involve the knowing and repeated transmission of computer files over the Internet,' and 'visitors must agree to certain terms and conditions' . . . in order to make full use of the site." (Doc. 17 at 8.)  These points are well taken.  *See Mavrix*, 647 F.3d at 1226; *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 353 (4th Cir. 2020).  Nonetheless, these allegations do not appear in the Complaint.

at 9.)  Taken together, the Website's revenues are linked in sizeable part to the American market.

Thus, it is also clear that MW knew, "either actually or constructively[,] about its [United States] user base, and that it exploits that base for commercial gain by selling space on its website for advertisements."  *Mavrix*, 647 F.3d at 1230.  On this point, "it is immaterial whether" MW specifically targeted the United States.  *Id.*  Aside from a large United States-userbase, it is alleged that MW: used American and proxy services; invoked United States' law on its website; used United States analytic and social media companies; and maintains its TLD through a United States based company. (Doc. 1 at 3–5.)  The Court also notes that the Website is alleged to have hosted copyrighted American works and that MW was notified of this fact. (*Id.* at 8–9.)  In this way, the Website uses American services to host American content viewed by American viewers.  These facts, construed in Plaintiffs' favor, demonstrate that MW's contacts with the United States were not "random, isolated, or fortuitous."  *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984).  These facts demonstrate that MW knew of its United States user base and generated revenue from that audience through advertising revenue.  At bottom, the ongoing availability and sustained profitability of the Website depends on American companies and citizens.

For its part, MW primarily points to the connections that MW does not have with the United States.  For example, MW points out that it neither has an office within the United States nor is it registered here. (Doc. 16 at 12.)  While true, these points do little to assist the Court in evaluating the contacts MW *does* have with the United States.

Also, MW erroneously relies on this District's decision in *AMA Multimedia LLC v. Wanat*, No. CV-15-01674-PHX-ROS, 2017 WL 5668025 (D. Ariz. Sept. 29, 2017), *aff'd*, 970 F.3d 1201 (9th Cir. 2020), which similarly evaluated whether there was personal jurisdiction over MW under nearly identical circumstances.  Although that court found that personal jurisdiction did not exist, and that decision was affirmed on appeal, the Ninth Circuit in *Briskin* expressly disavowed the thrust of those decisions and their incorrect application of *Mavrix*.  Of note, Judge Gould dissented on appeal in *AMA* and concluded

that there is personal jurisdiction over MW.  The court in *Briskin* specifically noted that Judge Gould relied "on a correct reading of *Mavrik*."  135 F.4th at 757 n.14.  The Court is thus persuaded by Judge Gould's dissent in *AMA* and finds that it applies here.  970 F.3d at 1218 (Gould, J., dissenting).

### 2. *Relates*

The Court next considers whether Plaintiffs' claim "arises out of or relates to the defendant's forum-related activities." *Axiom*, 874 F.3d at 1068.  The Court finds it does.

Here, the Website allegedly displayed copyright infringing videos, causing harm to Plaintiffs in the United States.  But for the Website, Plaintiffs would not have been harmed in the forum.  Therefore, Plaintiffs' harm arises out of MW's United States contacts.  *Cf. Mavrix*, 647 F.3d at 1228 ("[The claimant's] claim of copyright infringement arises out of [the defendant's] publication of the photos on a website accessible to users in the forum state.").

### 3. *Reasonable*

Finally, the Court considers whether it is reasonable to assert personal jurisdiction over MW.  This is determined based on a seven-factor balancing tests that looks to:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Briskin*, 135 F.4th at 761 (citation modified).  MW bears the burden of presenting a "compelling case" that exercising jurisdiction would be unreasonable.  *Id.*  MW fails to meet its burden; MW dedicates approximately one conclusory sentence to each factor.

At bottom, the Court already addressed that MW's interjection into the United States weighs in favor of jurisdiction.  Additionally, the United States has a strong interest in enforcing federal intellectual property laws and redressing corresponding injuries.  MW's arguments on the remaining factors are bereft of any substance.  For example, MW argues that "the extent of the conflict with the sovereignty of Defendant's domicile contradicts

with Polish and United States laws." (Doc. 16 at 15.) MW does not expound on this supposed conflict or contradiction. MW's other arguments proceed in a similarly vague fashion.

The only factor that MW spends more than a single sentence discussing is the second factor—the burden to defend. The Court recognizes that it would be burdensome for MW to defend in the United States; however, MW merely points to the fact that it would have to "hire outside counsel and possibly travel and expend additional resources and expenses." (Doc. 16 at 14.) While burdensome, this is insufficient to render the exercise of jurisdiction unreasonable. Accordingly, the Court finds that there is personal jurisdiction over MW.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED denying** Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 16).

Dated this 29th day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge